UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**DAN PALMER,**
an individual,
**NTG, LTD.,**
a Delaware Corporation,
**THE SCOTT W. STEWART LIVING TRUST,** and
**MIKE WAITE,**
an individual,

      Plaintiffs,                           CASE NO:

v.

**YACHT PATH INTERNATIONAL, INC.,**
a Florida Corporation,
**UNITY SHIPPING LINES, INC.,**
a Florida Corporation, and
**KEVIN CUMMINGS**
an individual,

      Defendants.
_____/

## COMPLAINT

Plaintiffs, SHERI LYNN V LLC, NTG, LTD., THE SCOTT W. STEWART LIVING TRUST, AND MIKE WAITE, hereby file their Complaint and sue Defendants, YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES, INC., and KEVIN CUMMINGS (collectively referred to as "Defendants") and allege:

### JURISDICTION AND VENUE

1. This is an action in excess of $75,000.

2. Plaintiff Waite is a resident of Wisconsin.

3. Plaintiff NTG, Ltd. is a Delaware company.

4. Plaintiff, Scott W. Stewart Living Trust, is a trust organized under the laws of the State of Wisconsin.

5. Plaintiff Palmer is a resident of Iowa.

6. Defendant Yacht Path International, Inc. ("Yacht Path") is a Florida corporation with its principal place of business located at 2860 West SR 84, Suite 118, Ft. Lauderdale, FL 33312.

7. Defendant Unity Shipping Lines, Inc. ("Unity") is a Florida corporation with its principal place of business located at 2401 PGA Blvd., Suite 155, Palm Beach Gardens, FL 34102.

8. Defendant Cummings is a resident of Florida and a principal of Yacht Path and Unity.

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10. Venue is proper under 28 USC § 1391 because one or more of the defendants reside in this District and a substantial part of the events or omissions giving rise to the claims described herein occurred in this District.

**GENERAL ALLEGATIONS**

11. Defendant Yacht Path represented itself to Plaintiffs and other consumers in the State of Florida to be a full service yacht transport company, capable of transporting privately owned vessels from one port to another, including from Ft. Lauderdale, Florida to Sault Ste. Marie, Canada, among other places.

12. Yacht Path International further represented itself to Plaintiffs and other consumers in the State of Florida to be a company that provided comprehensive vessel transportation services to the complete satisfaction of the vessel owners.

13. Defendant Unity represented itself to Plaintiffs and other consumers in the State of Florida to be the logistics provider and carrier for its affiliate company Yacht Path.

14. Unity further represented itself to Plaintiffs and other consumers in the State of Florida as a company that successfully delivers yachts from one port to another, including via ocean transport.

15. Defendant Cummings represented that Yacht Path and Unity were capable and prepared to ship privately owned motor yachts from Ft. Lauderdale, FL to Sault Ste. Marie, Canada in an effort to secure clients for his company.

16. Between January and May 2012, each Plaintiff individually entered into a contract with Defendant Yacht Path for the transport of motor yachts from Ft. Lauderdale, FL to Sault Ste. Marie, Canada.

17. On or about February 7, 2012, Plaintiff Sheri Lynn V LLC, entered into a contract for the transport of the motor yacht "Sheri Lynn V," a 58' Riviera, from Port Everglades, Ft. Lauderdale, FL to Sault Ste. Marie, Canada in May 2012.

18. Per the terms of the agreement, Dan Palmer, on behalf of Sheri Lynn V LLC, wired $32,650.00 to an account held by Unity Shipping Lines.

19. In the contract between Sheri Lynn V LLC and Yacht Path and Unity, clause 11 clearly states that "Yacht Owner reserves the option to cancel the booking and receive a full refund of monies paid if the yacht does not ship by May 13, 2012".

3

20. The motor yacht "Sheri Lynn V" was not shipped by Yacht Path or Unity per the terms of the contract by May 13, 2012. Sheri Lynn V LLC, through its principal Dan Palmer, has demanded a full refund numerous times but has yet to receive the same. Despite acknowledging that the money is owed to Plaintiff Sheri Lynn V LLC, Defendants are either unwilling or unable to refund the money owed.

21. Plaintiff Sheri Lynn V LLC was forced to take it upon itself to find other means of transportation to move the "Sheri Lynn V" from Ft. Lauderdale, FL to its intended destination, incurring additional expenses.

22. On February 28, 2012, Plaintiff NTG, Ltd. entered into a contract for transport of the motor yacht "Andiamo," a 70' Neptunus, from Port Everglades, Ft. Lauderdale, FL to Sault Ste. Marie, Canada in May 2012.

23. Per the terms of the agreement, Anthony Durpetti, on behalf of NTG, Ltd., wired $39,250.00 to an account held by Unity Shipping Lines.

24. In the contract signed between NTG, Ltd. and Yacht Path and Unity, clause 11 clearly states that "Yacht Owner reserves the option to cancel the booking and receive a full refund of monies paid if the yacht does not ship by May 13, 2012".

25. The motor yacht "Andiamo" was not shipped by Yacht Path or Unity per the terms of the contract by May 13, 2012. NTG, Ltd., through its principal Anthony Durpetti, has demanded a full refund numerous times but has yet to receive the same. Despite acknowledging that the money is owed to Plaintiff NTG, Ltd., Defendants are either unwilling or unable to refund the money owed.

26. Plaintiff NTG, Ltd. was forced to take it upon itself to find other means of transportation to move the "Andiamo" from Ft. Lauderdale, FL to its intended destination, incurring additional expenses.

27. On or about April 2, 2012, Plaintiff Scott W. Stewart Living Trust entered into a contract for the transport of the motor yacht "Endless Summer," a 61' Viking, from Port Everglades, Ft. Lauderdale, FL to Sault Ste. Marie, Canada in May 2012.

28. Per the terms of the agreement, Scott Stewart, on behalf of the Scott W. Stewart Living Trust, wired $28,517.00 to an account held by Unity Shipping Lines.

29. The motor yacht "Endless Summer" was not shipped by Yacht Path or Unity.

30. On or about June 29, 2012, Defendant Cummings informed the Scott W. Stewart Living Trust, through its representative Scott Stewart, that Yacht Path and Unity were unable to ship the "Endless Summer" for the foreseeable future.  At that time Scott Stewart demanded a full refund and was told by Defendant Cummings that he would receive the same.  Despite acknowledging on numerous occasions that the money is owed to Plaintiff Scott W. Stewart Living Trust, Defendants are either unwilling or unable to refund the money owed.

31. Plaintiff Scott W. Stewart Living Trust was forced to take it upon itself to find other means of transportation to move the "Endless Summer" from Ft. Lauderdale, FL to its intended destination, incurring additional expenses.

32. On or about February 7, 2012, Plaintiff Mike Waite, entered into a contract for the transport of the motor yacht "Ohh Boy," a 56' Viking, from Port Everglades, Ft. Lauderdale, FL to Sault Ste. Marie, Canada in May 2012.

33. Per the terms of the agreement, Mike Waite wired $31,550.00 to an account held by Unity Shipping Lines.

34. In the contract between Mike Waite and Yacht Path and Unity, clause 11 clearly states that "Yacht Owner reserves the option to cancel the booking and receive a full refund of monies paid if the yacht does not ship by May 13, 2012".

35. The motor yacht "Ohh Boy" was not shipped by Yacht Path or Unity per the terms of the contract by May 13, 2012. Mike Waite has demanded a full refund numerous times but has yet to receive the same. Despite acknowledging that the money is owed to Plaintiff Mike Waite, Defendants are either unwilling or unable to refund the money owed.

36. Plaintiff Mike Waite was forced to take it upon himself to find other means of transportation to move the "Ohh Boy" from Ft. Lauderdale, FL to its intended destination, incurring additional expenses.

37. To date, Defendants have yet to account for or return any of the funds paid by Plaintiffs for booking fees, which total $131,967.00.

## COUNT I – FLORIDA – UNFAIR AND DECEPTIVE TRADE PRACTICES

38. Plaintiffs reallege paragraphs 1-37 above as though set forth fully herein.

39. Plaintiffs are consumers within the meaning of Florida Statute §501.203.

40. Defendants held themselves out to be reputable full service boat transporters, capable of handling Plaintiffs' yacht transport.

41. Defendants engaged in unfair and deceptive trade practices in gaining Plaintiffs' trust and subsequently encouraging Plaintiffs to pay the full amount up front to book passage for their motor yachts through Yacht Path.

42. Defendants, through their principal Cummings further represented to Plaintiffs that they had secured a transport vessel that was prepared to ship Plaintiffs' yachts to Sault Ste. Marie, Canada in May 2012.

43. In fact, Defendants had never secured a transport vessel to ship Plaintiffs' yachts in May 2012, despite telling Plaintiffs that they had.

44. Plaintiffs demanded return of their money, which is guaranteed under the terms of their contracts, and explicitly acknowledged by Defendants, yet Defendants have refused to return the funds.

45. Defendants have further represented to Plaintiffs that their money is no longer available to be refunded despite the fact that the money was only intended to be used for each Plaintiff's individual yacht transport.

WHEREFORE, Plaintiffs request an award of damages in the amount of $131,967, additional compensatory damages, reasonable attorneys' fees, and costs, and any other relief which this Court deems appropriate.

## COUNT II – FRAUDULENT MISREPRESENTATION

46. Plaintiffs reallege paragraphs 1-45 above as though set forth fully herein.

47. Defendants, through their principal Cummings and via their websites represented to Plaintiffs that they were reputable full service boat transporters capable of transporting a yacht from Ft. Lauderdale, Florida to Sault Ste. Marie, Canada.

48. Defendants, through their principal Cummings and via their websites further represented to Plaintiffs that they provided comprehensive vessel transportation services to the complete satisfaction of the vessel owners.

49. Defendants, through their principal Cummings and via their websites, represented to Plaintiffs that they had secured a transport vessel that was prepared to ship Plaintiffs' yachts to Sault Ste. Marie, Canada in May 2012.

50. In fact, all of the above listed statements were false and Defendants knew them to be false.

51. Defendants knew that they had no control over a single cargo vessel capable of transporting Plaintiffs' yachts, and it was highly unlikely that Plaintiffs' yachts would actually be transported to Sault Ste. Marie in the time stated in the contract.

52. Nonetheless, Defendants marketed their yacht transport services to Plaintiffs in order to induce Plaintiffs to send them booking fees.

53. Plaintiffs reasonably relied on these representations, in entering contracts with Defendants to ship their yachts from Ft. Lauderdale, Florida to Sault Ste. Marie, Canada, and in tendering full payment therefor up front.

54. Plaintiffs collectively wired $131,967 to Defendants.

55. The yachts were never transported to Sault Ste. Marie.

56. Plaintiffs demanded return of their money per the terms of their contracts, yet Defendants have refused to return the funds, despite explicity acknowledging that refunds are owed to Plaintiffs.

57. Defendants further represented to Plaintiffs that the money is no longer available to be refunded despite the fact that the money was only intended to be used for each Plaintiff's individual yacht transport.

WHEREFORE, Plaintiffs request an award of damages in the amount of $131,967, additional compensatory damages, reasonable attorneys' fees, and costs, and any other relief which this Court deems appropriate.

### COUNT III– NEGLIGENT MISREPRESENTATION

58. Plaintiffs reallege paragraphs 1-57 above as though set forth fully herein.

59. Defendants, through their principal Cummings and via their websites represented to Plaintiffs that they were reputable full service boat transporters capable of transporting a yacht from Ft. Lauderdale, Florida to Sault Ste. Marie, Canada.

60. Defendants, through their principal Cummings and via their websites further represented to Plaintiffs that they provided comprehensive vessel transportation services to the complete satisfaction of the vessel owners.

61. Defendants, through their principal Cummings and via their websites, represented to Plaintiffs that they had secured a transport vessel that was prepared to ship Plaintiffs' yachts to Sault Ste. Marie, Canada in May 2012.

62. In fact, all of the above listed statements were false and Defendants knew or reasonably should have known them to be false.

63. Defendants knew or reasonably should have known that they had no control over a single cargo vessel capable of transporting Plaintiffs' yachts, and it was highly unlikely that Plaintiffs' yachts would actually be transported to Sault Ste. Marie in the time stated in the contract.

64. Nonetheless, Defendants marketed their yacht transport services to Plaintiffs in order to induce Plaintiffs to send them booking fees.

65. Plaintiffs reasonably relied on these representations, in entering contracts with Defendants to ship their yachts from Ft. Lauderdale, Florida to Sault Ste. Marie, Canada, and in tendering full payment therefor up front.

66. Plaintiffs collectively wired $131,967 to Defendants.

67. The yachts were never transported to Sault Ste. Marie.

68. Plaintiffs demanded return of their money per the terms of their contracts, yet Defendants have refused to return the funds, despite explicitly acknowledging that refunds are owed to Plaintiffs.

69. Defendants further represented to Plaintiffs that the money is no longer available to be refunded despite the fact that the money was only intended to be used for each Plaintiff's individual yacht transport.

WHEREFORE, Plaintiffs request an award of damages in the amount of $131,967, additional compensatory damages, reasonable attorneys' fees, and costs, and any other relief which this Court deems appropriate.

## PUNITIVE DAMAGES

70. Plaintiffs reallege paragraphs 1-69 above as though set forth fully herein.

71. Pursuant to Florida Statute §768.72, Plaintiffs hereby request punitive damages for the claims described herein.

72. Due to Defendants' fraudulent and/or negligent misprepresentations, intentional and/or grossly negligent misappropriation of Plaintiffs' funds after failure to ship Plaintiffs' yachts, and complete unwillingness to refund Plaintiffs' monies despite their open acknowledgement that refunds are owed,, punitive damages are appropriate.

73. WHEREFORE, Plaintiffs request punitive damages in an amount to be determined at trial.

Dated this _____ day of September, 2012.

Respectfully Submitted,

HILL, BETTS & NASH LLP
Attorneys for Plaintiff
1515 SE 17th Street
Suite A115
Ft. Lauderdale, FL 33325
(954) 522-2271
(954) 522-2355  facsimile

By_____
Andrew J. High
Florida Bar No. 0041150
